HUDSON, Respondent, vs. GRAFF, Appellant.

*.May 24—July 1, 1948.*

*Lorin L. Kay* of Richland Center, for the appellant.

For the respondent there was a brief by *Hill, Beckwith & Harrington* of Madison, and oral argument by *John T. Harrington.*

FRITZ, J.  The appellant Graff contends the circuit court erred in making the order in question requiring Graff to produce, under sec. 269.57, Stats., certain books, etc., for the inspection and examination by the plaintiff and respondent Hudson, and that as said order for the inspection, etc., grants a provisional remedy, it is appealable under the provisions in sec. 274.33 (3), Stats., which authorizes an appeal from an order when it "grants, refuses, continues or modifies a provisional remedy." The latter contention must be sustained. As this court said in *Northern Wis. Co-op. Tobacco Pool v. Oleson,* 191 Wis. 586, 592, 211 N. W. 923,—

"Sec. 4183 [now sec. 269.57] . . . provides a provisional remedy, and such an order is appealable under sec. 274.33, sub. (3)."

That has been considered the established rule since *Noonan v. Orton,* 28 Wis. 386; *Ellinger v. Equitable Life Assur. Society,* 125 Wis. 643, 648, 104 N. W. 811.

The court's order from which the defendant Graff appealed required him to produce, in so far as it is within his power to do so, at the offices of his attorney for inspection and examination by plaintiff and his attorneys and accountants, certain rec-

ords, etc., listed in detail in an Exhibit A, which was attached and made a part of the order. To determine the propriety of plaintiff's resorting to the discovery procedure provided by sec. 269.57, Stats., and the relevancy of the records, etc., ordered to be produced, there should be taken into consideration the pleadings and motion papers to determine the relationship between the parties, the issues in the action, and the nature of records, etc., sought to be examined. *Cespuglio v. Cespuglio,* 238 Wis. 603, 300 N. W. 780. At the time of the hearing of the motion pursuant to which the court made the order under review requiring defendant to produce said records, etc., there were on file and submitted to the court plaintiff's complaint, defendant's answer and counterclaims, and plaintiff's replies thereto; an affidavit made by the plaintiff and another made by his accountant, Karl F. McMurry, to which there was an attached Exhibit A listing and briefly describing the records, etc., sought to be examined; and also an affidavit by the defendant. Briefly stated so far as necessary here, it appears from the matters stated in said pleadings and motion papers that, commencing in April, 1934, Hudson and Graff were engaged, as members of a partnership or a joint enterprise, in numerous transactions in conducting an automobile-financing and sales-finance business. In the course thereof they, on March 10, 1936, entered into a written contract as to which it suffices to note,—in so far as is presently material herein,—that it was provided therein that,—

Hudson does thereby assign to Graff all his right, title, and interest in and to all of the notes, conditional sales, agreements, contracts, chattel mortgages, and other documents evidencing the loans and the assets of said automobile-financing operation and being in the aggregate amount of $35,689.08; that moneys are received in the liquidation of any of said assets, and will be the property of Graff until his account amounting to $29,578.91 on March 10, 1936, shall have been liquidated; that all moneys thereafter received up to $6,110.17 shall be the property of Hudson, and any moneys in excess of said amounts are to be the equal property of the parties; that the business

conducted by them up to and including March 10, 1936, shall be liquidated as stated above; and commencing on March 11, 1936, they shall conduct a financing business along certain specified lines, and out of any moneys received from the liquidation of the old business and payable by Graff which he agrees up to December 1, 1936, to consider as capital of the new business about to be undertaken, that said moneys shall be issued only to purchase under certain conditions automobile paper issued by Hudson or one of the garages owned or controlled by him; that after the payment of the expenses and taxes of the new business, and making reasonable provisions for possible losses, the net profits shall be divided between the parties in the manner prescribed in their agreement.

Under that contract of March 10, 1936, it appears that Graff evidently became obligated to liquidate and account for the liquidation of business contracted in said sales and finance business during the period prior to March 10, 1936, and to carry this operation over into the "new business" which was to be operated after that date under said contract; and in respect to such "new business" and the funds derived from the old business, Graff again had the obligation to account to the end that each party should ultimately receive an equal share of earnings, if any. On the allegations in his complaint Hudson seeks to recover judgment providing among other matters that said partnership or joint enterprise be adjudged dissolved; that Graff be required to account for the property and assets of said partnership or enterprise which came into his hands or under his control, and for his conduct and management thereof, and for the profits and income thereof, and the benefits and profits derived by him from transactions connected with the conduct thereof and from the use by him of its property; that the proceeds thereof be divided between the parties hereto according to their respective rights; and that Hudson have judgment against defendant for the amount due to him from Graff on such accounting and for the value of Hudson's interest in the partnership or enterprise and its assets and

property. On the other hand, upon matters alleged in Graff's answer and counterclaims, he demanded judgment for the recovery from Hudson of damages by reason of the latter's acts, and his conduct in the course of their said transactions. Upon Hudson's allegations in his reply to said counterclaims he demanded judgment dismissing them.

In plaintiff's affidavit in support of his motion for the order in question he states:

". . . defendant has had, during the entire period . . . and now has, the entire and exclusive possession and control of all of the records, books, files, documents and other documentary material, including that herein requested to be produced, and relating to and connected with, and kept by the defendant in his conduct of the said [automobile financing] business during the entire period of April 18, 1934, to date, and that this plaintiff does not now, and never has had, any of the said books of account, records, documents and documentary material in connection with said business in his possession or under his control."

McMurry states in his affidavit that upon being employed as plaintiff's accountant, he attempted to make for him an audit of such books, records, and writings as were produced by Graff, pursuant to a subpoena,—

That in order to make a complete and accurate accounting and audit with respect to all financial transactions involved in this action and controversy, all of the said books of account, records, documents, writings, and other documentary material as described in Exhibit A are material, relevant, and necessary, and on information and belief he states that the sole record of payments made by check by Graff, in his conduct of the said business during said period, is that shown by canceled checks and check stubs, and that such evidence of such alleged payments of money is lacking and deficient in many cases of disbursements of money as made by him; that from affiant's examination of books, etc., heretofore produced by Graff, affiant has reason to believe that moneys received by Graff, in his conduct of the United Finance business were used by him in other automobile-financing transactions, and that he has com-

mingled moneys belonging to said United Finance business, conducted by him during the period stated, with his own moneys in his personal deposit and checking accounts in the banks listed in said Exhibit A, and in other banks unknown to this affiant or Hudson; that as McMurry states on information and belief Graff in the conduct of the said business kept no ledger accounts with the various garages described in the pleadings and from whom he financed automobiles and other motor vehicles, in his conduct of said business, and it therefore becomes impossible, without an inspection and audit of the records, etc., listed in the attached Exhibit A, to determine if moneys received by Graff in such financing was properly credited in his conduct of said United Finance business during said period; that a large number of contracts filed in offices of registers of deeds were found filed in the name of United Finance and others in the name of Graff, and that the total face value of the contracts so filed in either of said names between April 18, 1934, and December 7, 1938, are in excess of $100,000; and that affiant's examination of the books, etc., so far produced to date by Graff with respect to the United Finance business discloses that between April 18, 1934, and April 28, 1938, Graff received $128,721.96 in excess of loans and investments made by him in the conduct of said business during said period and that he has not accounted in this action prior hereto for said excess profits.

On the other hand, in a counteraffidavit Graff denied many of the matters stated in Hudson's and in McMurry's affidavits, and also denied that he was in possession or able to produce many of the matters listed in Exhibit A.

Under the statements in the affidavits respectively relied upon by the parties and the conflicts therein in many respects, it was within the province of the trial court to determine the truth thereof, which he evidently did by deciding the material matters in issue in favor of Hudson's contentions. In view of the admitted contract of March 10, 1936, between the parties, under and by which Graff was required to liquidate and account for the liquidation of the parties' partnership or joint-enterprise business transactions during the period up to

March 10, 1936, and likewise account in respect to the new business transacted under the contract of that date, to the end that each party should ultimately receive his share of the profits therein, it seems futile for Graff to claim that the information which Hudson seeks to obtain upon Graff's production for Hudson's inspection and examination of the matters listed in Exhibit A, is irrelevant or unnecessary. As an accounting by Graff in respect to the transactions in question is clearly required of him by the contract of March 10, 1936, no useful purpose will be served by any detailed statements or extended discussion in relation to the materiality and necessity of the inspection and examination sought by plaintiff. Whether, in the course of the initial conduct of their transactions, or of their transactions under their subsequent agreement of March 10, 1936, the relationship between the parties was evidently that of a partnership or some other form of joint enterprise, is not material at this time. In either event it is obvious under the facts stated in the affidavits and pleadings that Hudson and Graff were jointly engaged in the transactions in question under agreements which entitled Hudson to share in some of the net profits thereof, and that he is therefore entitled in this action for an accounting in relation thereto and to have the court order, as it did, Graff to produce for inspection and examination by the plaintiff and his accountant and attorneys the records, etc., listed in said Exhibit A at the place and time specified in the order, in so far as it is within Graff's power so to do.

*By the Court.*—Order affirmed.

MARTIN, J., took no part.